

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

JIN BEN SHEPPERD
ATTORNEY GENERAL

June 13, 1955

Mr. Carl C. Conley
County Attorney
Ramondville, Texas

Dear Mr. Conley:

Opinion No. S-161

Re: Authority of Commissioner's
Court to employ non-experts
to assist County Board of
Equalization.

You request the opinion of this office on three questions presented in your letter of April 21, 1955, which reads as follows:

"The County Auditor of Willacy County, with the following statement of facts, presents the following questions for your consideration:

"The Willacy County Board of Equalization are endeavoring to ascertain the value of the improvements and lands in Willacy County.

"They have hired individuals from each precinct to gather, compile and furnish all available information and data for use by the Board of Equalization in determining the proper valuation to be placed upon lands and improvements within Willacy County.

"This is being done without the approval of the Assessor-Collector of Taxes. The individuals are not classed as tax experts.

"Question No. 1. Can the Board of Equalization legally hire these individuals without the approval of the Assessor-Collector?

"Question No. 2. Does the hiring of the individuals to aid the Board of Equalization ursurp the constitutional powers and duties of the Tax Collector-Assessor?

"Question No. 3. If the above is legal, out of what fund or funds can the individuals be paid?"

Your questions may be answered by a general discussion; hence, categorical answers are not required.

Section 18 of Article V of the Constitution provides in part as follows:

"Each County shall . . . be divided into four commissioners' precincts in each of which there shall be elected by the qualified voters thereof one county commissioner, who shall hold his office for two years . . . The county commissioners so chosen, with the county Judge, as presiding officer, shall compose the County Commissioners Court . . ."

Section 18 of Article VIII of the Constitution provides as follows:

"The Legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation, (the County Commissioner's Court to constitute a board of equalization); and may also provide for the classification of all lands with reference to their value in the several counties."

The foregoing are the basic constitutional provisions pertaining to the Commissioner's Court as a Board of Equalization. Section 14 of Article VIII of the Constitution, dealing with the Tax Assessor-Collector, is as follows:

"There shall be elected by the qualified electors of each county at the same time and under the same law regulating the election of State and county officers, an Assessor AND COLLECTOR of Taxes, who shall hold his office for two (2) years and until his successor is elected and qualified; AND SUCH ASSESSOR AND COLLECTOR OF TAXES SHALL PERFORM ALL THE DUTIES WITH RESPECT TO ASSESSING PROPERTY FOR THE PURPOSE OF TAXATION AND OF COLLECTING TAXES AS MAY BE PRESCRIBED BY THE LEGISLATURE." (Emphasis added.)

By virtue of Section 16 of Article VIII of the Constitution the sheriff, in addition to his other duties, serves as Tax Assessor-Collector in counties of 10,000 population or less.

As will be observed by an examination of Section 18 of Article VIII of the Constitution, supra, the County Board of Equalization is simply the County Commissioner's Court sitting in a valuation of property capacity. Strictly speaking, the Board of Equalization possesses no powers except to equalize values. It has no power as such to make contracts. This power is vested in the Commissioner's Court. The Tax Assessor-Collector is a constitutional officer and the Commissioner's Court is a constitutional court with its jurisdiction limited to county business.

Article 7211, Vernon's Civil Statutes, outlines the procedure to be followed by the Tax Assessor-Collector in situations where property has been rendered to him by taxpayers as well as where the taxpayer's valuation, as fixed by him, does not reflect actual values and to which the Assessor-Collector does not agree. The statute further directs that the Assessor-Collector shall "furnish such rendition together with his valuation thereon" to the Commissioner's Court. In addition to this article of the statute, provision is made which directs the Assessor-Collector to transmit to the Commissioner's Court sitting as a Board of Equalization, assessments of rendered and unrendered property. (Articles 7218, 7206, 2217.) After there has been returned to the Assessor-Collector by the Commissioner's Court (Board of Equalization) the list of rendered and unrendered property theretofore equalized by the Board of Equalization as to the values, the Assessor-Collector, using forms prescribed by the Comptroller, proceeds as follows:

"(1) He assesses all unrendered property.

"(2) He prepares 'rolls or books' of all rendered and unrendered real and personal property. Four rolls of the rendered, and three copies of the unrendered property assessments are required, one copy of each to be distributed to the Comptroller, and one copy of each to the County Clerk's office 'for the inspection of the public.'

"(3) On or before August 1st the Assessor-Collector transmits to the Board of Equalization his 'rolls or assessment books', with his affidavit attached thereto in a form directed by statute.

"(4) When transmitting the 'rolls or assessment books' the Assessor-Collector also delivers to the Board of Equalization 'all the lists, statements' theretofore received by him, and these lists and statements are filed in the County Clerk's office and are available for inspection by the public.

"(5) The Board of Equalization, after it has examined and approved the 'rolls or assessment books' transmits copies to the Comptroller, County Clerk, and the Assessor-Collector."

The tax roll being thus completed by the Assessor-Collector, it is submitted to the Commissioner's Court (Board of Equalization) for final approval if found to be correct. This roll, as finally approved, is returned to the Assessor-Collector by the Commissioner's Court (Board of Equalization) and he proceeds to collect the taxes therein levied as authorized by Article 7253, V.C.S.

The foregoing constitutes the constitutional and statutory basis of assessing and equalizing property for taxation and it will be observed that the relationship between the Commissioner's Court (Board of Equalization) and the Assessor-Collector in this assessing and equalizing process is definitely defined.

It is observed that none of these constitutional and statutory provisions specifically confer any power upon the Commissioner's Court to employ outside or independent help either to assist the Tax Assessor-Collector or the Commissioner's Court sitting as a Board of Equalization in the performance of their respective official duties. It has been definitely decided by our courts, however, that the Commissioner's Court has the implied power to employ independent assistants to assist in arriving at the value to be fixed by the Commissioner's Court as a Board of Equalization where technical or special knowledge is necessary and which knowledge the Commissioner's Court would not be presumed to possess, such for example as oil property or any other type of property in which skilled or technical knowledge is necessary in order to attain a fair valuation. One of the first cases to consider the authority of the Commissioner's Court to employ outside help in valuing property is Roper v. Hall, 280 S.W. 289 (Tex.Civ.App. 1926), in which the court held that the Commissioner's Court of Freestone County had authority to make a contract with a private individual to list owners or all producing oil and gas properties within the county and make a valuation of all pipelines, refineries, tank farms, tankage, etc., used in connection with oil and gas development, including transportation facilities. The court based its decision upon the premise that the value of the particular kind of property involved could not have been determined by one who possessed only ordinary knowledge as to such property and hence the court had the implied authority to secure the services of an expert as to the value of such property. The court was careful to point out, however, that the contract precluded the possibility that the expert would perform any of the duties imposed by law on the Tax Assessor-Collector or the Board of Equalization, stating that the purpose of the contract was merely to aid such officers in the performance of their duties. The next case in which the court had occasion to consider the power vested in a taxing authority to employ assistants in arriving at fair appraisals is Simkins v. City of Corsicana, 86 S.W.2d 792 (Tex.Civ.App. 1935). In this case the court said:

> "We know of no valid reason why a tax board cannot employ an expert to assist it in arriving at the true value of taxable property, and when such expert has been employed the board should have a right to take into consideration the information so furnished by him in ascertaining the true value of property for tax purposes. . . . But it must be remembered that such experts so employed bear no official relationship to the property owner and have no statutory authority to fix the value at which the property is to be assessed. . ."

The same problem was later presented and ruled upon in the case of Marquart v. Harris County, 117 S.W.2d 494 (Tex.Civ.App. 1938, error dism.), and the contract considered in that case was condemned by the court because of its broad application to all of the taxable property in the county and, in effect, superseded the statutory powers of the Tax Assessor-Collector. The case followed, however, the previous decisions that contracts of employment of experts to aid in valuing certain types of property were legal and constituted an appropriate expenditure of public funds. Under the statement of facts submitted by you, concededly the persons to be employed by the Commissioner's Court are not experts, nor does it appear that any properties are involved that would require expert knowledge in the proper appraisal of their value for taxation purposes. Presumably, the Tax Assessor-Collector and the Board of Equalization whose duty it is to assess property and to equalize its value would possess the same general information and knowledge that the persons possess who are to be employed.

The last case to consider this problem is Crosby v. P. L. Marquess and Co., 226 S.W.2d 461 (Tex.Civ.App. 1950, error ref. n.r.e.), which case upholds the validity of an appraisal and valuation contract which had been entered into by the trustees of the Kuntz Independent School District and P. L. Marquess and Company. This case has apparently gone further than any prior case in upholding the validity of a contract to appraise property in behalf of a taxing district. A careful reading of the case, however, does not compel the conclusion that Roper v. Hall and Marquart v. Harris County, supra, are to be disregarded. In this case the court stated specifically that it followed the case of Roper v. Hall and that case does not extend the implied doctrine applicable to appraisal contracts beyond expert and technical knowledge. Furthermore, the court stated that the testimony revealed that the Marquess Company worked with the Tax Assessor-Collector of the school board. They did not attempt to value land in the school district but merely supplied information and made appraisals of improvements.

## SUMMARY

The Commissioner's Court does not have the authority to employ and pay from public funds laymen concededly possessing no special or technical skill in the

evaluation of property to assist them as a Board of Equalization in equalizing the taxable values of all taxable property in the county.

APPROVED:                                    Yours very truly,

John Atchison                                JOHN BEN SHEPPERD
Reviewer                                     Attorney General

J. C. Davis, Jr.
Reviewer

By *L. P. Lollar*

Robert S. Trotti                             L. P. Lollar
First Assistant                              Assistant

John Ben Shepperd
Attorney General